## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                  )
ALIRIO TEIXEIRA BAPTISTA,         )
                      Plaintiff,  )
                                  )         Civil Action
v.                                )         No. 19-11467-PBS
                                  )
TODD LYONS,                       )
Acting Field Office Director      )
U.S. Immigration and Customs      )
Enforcement,                      )
ANTONE MONIZ,                     )
Superintendent of Plymouth County )
Correctional Facility,            )
JOSEPH D. MCDONALD, JR.,          )
Sheriff of Plymouth County        )
                   Respondents.   )
_____ )

### MEMORANDUM AND ORDER

February 11, 2020

Saris, D.J.

This is a motion for attorney fees and costs in the amount of $12,417.50 brought under the Equal Access to Justice Act ("EAJA") by Petitioner Alirio Teixeira Baptista against Respondents Todd Lyons, Antone Moniz and Joseph D. McDonald, Jr. After hearing and review of the record, this Court **DENIES** the motion for attorney fees. (Docket No. 13).

### FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.

I.    **Petitioner's Background**

Petitioner is a citizen of Cape Verde who has resided in the United States for over 40 years. He entered the United States on October 27, 1979 as a lawful permanent resident. He has three U.S. citizen children.

On April 30, 2001, Petitioner was found guilty of possession of cocaine and placed in removal proceedings. An immigration judge granted Petitioner's application for cancellation of removal on January 6, 2003.

Petitioner was subsequently convicted of other state crimes: a January 2006 conviction for second offense of shoplifting; a February 2006 conviction for receiving stolen property; a November 2008 conviction for larceny and trespass; a February 2009 conviction for possession of cocaine; an August 2015 conviction for operating a motor vehicle with a revoked license; and two December 2016 convictions for shoplifting by asportation, third offense. He also has three open cases in state court.

In January 2017, the Department of Homeland Security ("DHS") issued a Notice To Appear charging Petitioner with removability on two grounds. Petitioner was charged under INA § 237(a)(2)(A)(ii) as an alien who has been convicted of two crimes involving moral turpitude after admission, and under INA § 237(a)(2)(B)(i) as an alien who has been convicted of a

violation of (or conspiracy or attempt to violate) any law related to controlled substances. In February 2017, when Petitioner attempted to appear at the Quincy District Court to schedule hearings on his open criminal matters, he was taken into immigration custody.

In April 2017, the controlled substances offense that provided the basis for Petitioner's removal under INA § 127(a)(2)(B)(i) was vacated with prejudice, causing the corresponding charge of removability to be withdrawn in August 2017. Thereafter, only the ground for removal based on two crimes involving moral turpitude remained.

## II.   **Immigration Court Proceedings**

A Petition for Alien Relative was filed by Petitioner's daughter on his behalf in July 2017 and was approved in September 2017. After that, Petitioner submitted to Immigration Court an application to adjust status and an application for waiver of grounds of inadmissibility. At the December 5, 2017 hearing, DHS moved to pretermit Petitioner's applications based on his 2001 conviction for possession of cocaine.

On December 19, 2017, the immigration judge granted DHS's motion and ordered Petitioner removed to Cape Verde. Petitioner appealed the removal order to the Board of Immigration Appeals (BIA). The appeal was dismissed on May 9, 2018.

After additional rulings on Petitioner's motions to reopen his case, the BIA remanded Petitioner's case back to the Immigration Court on October 3, 2018. In early 2019, an immigration judge again ordered Petitioner removed to Cape Verde. Petitioner did not appeal. Instead, he filed motions for new trial for the state court convictions that rendered him deportable.

Meanwhile, the United States Immigration and Customs Enforcement ("ICE") scheduled the Petitioner's removal to Cape Verde on June 28, 2019. Due to a lack of available seats on the June 28, 2019 flight, ICE moved the date of removal to July 5, 2019. Petitioner and his family were notified of the removal date.

## III. **State Court Proceedings**

On July 1, 2019, the Quincy District Court issued a habeas writ to the Sheriff of Plymouth County and the Plymouth Correctional Facility to bring Petitioner to court on July 3, 2019. Petitioner sought to clear default warrants issued during Petitioner's detention by ICE and to be heard on his motion for new trial.

Petitioner was not brought to the Quincy District Court on July 3, 2019. Petitioner's counsel was unable to reach anyone at ICE's Boston field office that day. According to Respondents, ICE received the habeas writ from the Quincy District Court on

July 2, 2019. ICE states that it did not honor the writ because it did not have enough advance notice.

In addition to the July 3, 2019 hearing, Petitioner had evidentiary hearings scheduled for July 8, 2019 in the Boston Municipal Court ("BMC") in Roxbury and July 12, 2019 in BMC Dorchester. ICE claims that it did not receive a habeas writ for the July 8, 2019 hearing. On July 9, 2019, ICE received a habeas writ for the July 12, 2019 hearing and approved it. Petitioner was successful in his post-conviction motions in state court, and subsequently filed a motion to reopen in immigration court. Petitioner was released from immigration custody and his status has been returned to that of a lawful permanent resident.

## IV.  **Federal Habeas Proceedings**

On July 3, 2019, Petitioner filed a petition for writ of habeas corpus in this Court on the ground that Respondents failed to transport him to his state criminal court hearing. In his petition, Petitioner also sought a temporary restraining order ("TRO") requiring the government to transport him to the July 8, 2019 hearing, the July 12, 2019 hearing, and the rescheduled July 3, 2019 hearing. On the same day, this Court (Saris, J.) issued a standard, pro forma order requiring ICE to give the Court 48 hours advance notice before Petitioner was moved out of the jurisdiction in order to give the Court time to

consider the petition. As a result, Respondents cancelled

Petitioner's removal from the District scheduled for July 5.

On July 5, 2019, the court (Young, J., the Emergency Judge)

granted, ex parte, a 10-day TRO which provides in full:

> Treating the prayer for affirmative injunctive relief as seeking all lesser forms of relief, this Court, ex parte, enters the following temporary restraining order to preserve the status quo and all the rights of the parties:
>
> Upon the filing of a petition verified under oath (the present petition is not), the respondents, their agencies, servants, employees, and all persons acting in concert with them, including the Article I adjudicative arm of the Department of Homeland Security (the immigration courts) are hereby restrained and enjoined for the period of ten days from taking any action whatsoever – procedural or substantive – further to effectuate the deportation of the petitioner. Any action taken in violation of this order is void and of no force and effect.
>
> This order shall terminate upon the happening of the first of the following three conditions:
>
> 1. The petitioner is afforded the opportunity to attend duly scheduled hearings pertaining to his post-conviction remedies in the Courts of the Commonwealth.
>
> 2. The Court enters a further order modifying or terminating this temporary restraining order.
>
> 3. Ten days shall elapse.

Docket No. 4. After Petitioner attended his criminal

proceedings, he was released from immigration custody on July

19, 2019.

On July 26, 2019, Respondents moved to dismiss the petition on the ground that Petitioner was released. On August 16, 2019, Respondents' motion was granted without opposition. As a result, the case was dismissed without prejudice.

On September 9, 2019, Petitioner filed this timely motion for attorneys' fees pursuant to Fed. R. Civ. P. 54 and the EAJA, 28 U.S.C. § 2412.

## LEGAL STANDARD

Generally, each party is required to bear his own attorneys' fees. Castañeda-Castillo v. Holder, 723 F.3d 48, 56 (1st Cir. 2013). However, under the EAJA a party may obtain attorneys' fees from the government if he proves "1) that he is the prevailing party in the civil action; 2) that his petition was timely filed; 3) that the government's position was not substantially justified; and 4) that no special circumstances make an award against the government unjust." Id. at 57 (citations omitted). The EAJA seeks to "eliminate financial disincentives for those [challenging] unjustified governmental action" and to "deter the unreasonable exercise of Government authority." Ardestani v. INS, 502 U.S. 129, 138 (1991). Nevertheless, since the EAJA effectively waives part of the government's sovereign immunity by making it liable for the other party's attorney fees, it must be strictly construed in favor of the government. Id. at 137.

**DISCUSSION**

I.   **Prevailing Party**

Respondents argue that Petitioner is not a prevailing party because he did not succeed on the merits of his claim. The phrase "prevailing party" is a "legal term of art" for "one who has been awarded some relief by the court." Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001). A party does not achieve prevailing party status merely by "accomplishing its objectives," Castañeda-Castillo, 723 F.3d at 57, or by instigating "a voluntary change in the [opposing party's] conduct" through litigation, Buckhannon, 532 U.S. at 601.

To qualify as a prevailing party, a party must show both (1) a "material alteration of the legal relationship of the parties" and (2) a "judicial imprimatur on the change." Castañeda-Castillo, 723 F.3d at 57 (quoting Aronov v. Napolitano, 562 F.3d 84, 89 (1st Cir. 2009)). The "judicial imprimatur" requirement is met only where the party "obtained a court-ordered consent decree" or "received a judgment on the merits." Castañeda-Castillo, 723 F.3d at 57 (quoting Buckhannon, 532 U.S. at 605).

Several circuit courts have held that a party is a prevailing party if it "secures a preliminary judgment based on a judicial judgment of the likelihood of success on the merits,

and the passage of time together with that injunction, provides the party with all the relief it has ever sought." Tri-City Cmty. Action Program, Inc. v. City of Malden, 680 F. Supp. 2d 306, 312-14 (D. Mass. 2010) (collecting cases from the Third, Fifth, Ninth, and District of Columbia Circuits). In contrast, "interlocutory orders that serve merely to maintain the status quo usually are deemed insufficient to buoy a fee award." Me. Sch. Admin. Dist. No. 35 v. Mr. R., 321 F.3d 9, 15 (1st Cir. 2003); see also Sinapi v. R.I. Bd. of Bar Exam'rs, 910 F.3d 544, 551-52 (1st Cir. 2018) (holding the standards for a prevailing party were not met where the district court had declined to address the moving party's substantive arguments during the "hasty and abbreviated" ex parte TRO proceedings)

Here, Petitioner argues that a "material alteration of the legal relationship of the parties" occurred because this Court barred Petitioner's removal from the District of Massachusetts via both a standard 48-hour order on July 3, 2019 and a TRO on July 5, 2019. Respondents do not dispute that upon receiving the 48-hour order, they cancelled Petitioner's removal scheduled for July 5, 2019.

The essential question, then, is whether the Court's orders constituted "judicial imprimatur" by providing a "judgment on the merits." The 48-hour order aimed only to "give the Court time to consider" the petition, addressed no substantive issues,

and made no determinations of Petitioner's likelihood of success on the merits. Likewise, the TRO was issued based on an <u>ex parte</u> request, did not address the merits of Petitioner's claim, and did not make any explicit findings of either party's likelihood of success on the merits. The TRO's stated purpose was simply "to preserve the status quo and all the rights of the parties." Docket No. 4 at 1. Such orders cannot confer prevailing party status.

Petitioner argues that the Emergency Judge found a likelihood of success for Petitioner's claim of a right to attend state court proceedings, because the judge held that the TRO would terminate if Petitioner had the "opportunity to attend duly scheduled hearings" in state court. Docket No. 4 at 1. But Petitioner reads the TRO too narrowly. The order states that it will terminate upon the happening of the earliest of three conditions, only one of which was Petitioner's attendance at the state court proceedings. The Court did not order Petitioner transported to the hearing. Accordingly, the Emergency Judge did not address the merits of Petitioner's case when he issued the TRO.

## II.  **Substantial Justification**

Even if Petitioner were to qualify as a prevailing party, attorneys' fees would not be merited here because the

government's position in the litigation was "substantially justified." Castañeda-Castillo, 723 F.3d at 73.

Under the EAJA, the government bears the burden to establish that its position was "substantially justified" "both during the litigation and the agency proceedings that preceded the litigation" by "a preponderance of the evidence." Id. A position is "substantially justified" when it "had a reasonable basis both in law and in fact." Pierce v. Underwood, 487 U.S. 552, 563 (1988) (citation omitted). In other words, the government's position is reasonable if it is "justified to a degree that could satisfy a reasonable person." Id. at 565. The government's position does not to be "justified to a high degree"; rather, as long as its position is "justified in substance or in the main," it is "substantially justified." Saysana v. Gillen, 614 F.3d 1, 5 (1st Cir. 2010) (quoting Pierce, 487 U.S. at 565).

Here, the government did not take any position with respect to the 48-hour order or the TRO, as they were issued ex parte. Moreover, its position in this litigation and the prior proceedings was substantially justified. On July 1, 2019, the Quincy District Court issued the request for a hearing held on July 3, 2019, which Respondents allegedly did not receive until July 2, 2019. According to the Committee for Public Counsel Services' recommended practice for bringing defendants from

immigration custody to state court proceedings ("habeing"), dated January 2019, "defense counsel should request that the clerk issue the habe a few days prior to the court date (as opposed to the day before)." Docket No. 21-1 at 1. Respondents argue that they were unable to accommodate Petitioner's request to attend the July 3, 2019 hearing because they had insufficient time to "coordinate in order for transport to occur." Id. Given that the habeas writ issued during the Fourth of July week and allowed the government less than the recommended notice, Respondents have established that their failure to honor the July 1, 2019 habeas writ was "substantially justified." Castañeda-Castillo, 723 F.3d at 73. Furthermore, Petitioner was brought to state court for the July 12, 2019 hearing, when the government received the habeas writ in a timely fashion.

Petitioner has a constitutional due process right to "be present at any stage of [a] criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987); see also United States v. Veloz, No. 17-2136, 2020 WL 401801, at *10 (1st Cir. Jan. 24, 2020) (reiterating same). Petitioner claims that he accordingly had a constitutional right to be heard on his motion for a new trial on July 3, 2019. Even if true, Respondents have demonstrated that given the circumstances of this case, in particular the last-minute nature

of Petitioner's request, the government was substantially

justified in not honoring the habeas writ.

### ORDER

Petitioner's motion for attorney fees (Docket No. 13) is

**DENIED**.


SO ORDERED.

/s/ PATTI B. SARIS
_____
Hon. Patti B. Saris
United States District Judge